IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY J. COMBES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Action No. 2:20-1026 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], | ) ) ) ) |
| Defendant. | ) ) |

AMBROSE, Senior District Judge

**OPINION
and
ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 12 and 16]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 13 and 17]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Plaintiff's Motion for Summary Judgment [ECF No. 12] and granting Defendant's Motion for Summary Judgment. [ECF No. 16].

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. Plaintiff applied for DIB on or about August 11, 2017, and SSI on or

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is therefore automatically substituted for Andrew M. Saul as the Defendant in this suit.

1

about October 27, 2017. [ECF No. 10-5 (Exs. 1D, 2D)]. Plaintiff alleged that since July 1, 2017, he had been disabled due to spinal stenosis and herniated disc in his neck. [ECF No. 10-6 (Exs. 1E, 2E)]. Administrative Law Judge ("ALJ") Pearline Hardy held a hearing on June 6, 2019, at which Plaintiff was represented by counsel. [ECF No. 10-2 at 63-84]. Plaintiff appeared at the hearing and testified on his own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 78-83. In a decision dated July 3, 2019, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform; therefore, Plaintiff was not disabled under the Act. [ECF No. 10-2 at 10-18]. Plaintiff requested review of the ALJ's determination by the Appeals Council, and the Appeals Council denied Plaintiff's request for review. [ECF No. 10-2 at 1-3]. Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 12 and 16]. The issues are now ripe for my review.

## II.     LEGAL ANALYSIS

### A.     STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Regardless of "the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (U.S. 2019). Substantial evidence has been defined as "more than a mere scintilla." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek, 139 S. Ct. at 1154. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of

the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.   WHETHER THE ALJ ERRED IN CONCLUDING THAT CLAIMANT DID NOT MEET A LISTING IN APPENDIX I, SUBPART P, REGULATION 4, SPECIFICALLY LISTING 1.04**

At step two of the analysis, the ALJ found that Plaintiff had severe impairments, including degenerative disc disease of the cervical and lumbar spine status-post lumbar laminectomy, and history of a gunshot wound. [ECF No. 10-2, at 13]. She then found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listing 1.04. Id. The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except with the option to sit for ten minutes after every one hour of standing as long as he is not off-task or away from the workstation; cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs; can occasionally balance, stoop, crawl, and crouch; cannot work at unprotected heights; can occasionally tolerate exposure to extreme cold and vibration; and can occasionally extend, flex, and rotate his neck. [ECF No. 10-2 at 13-14]. The ALJ ultimately concluded Plaintiff was not capable of performing his past relevant work, but that there were other jobs that exist in the national economy that Plaintiff could perform; therefore, Plaintiff was not disabled. Id. at 16-17.

Plaintiff asserts that the ALJ erroneously failed to address and discuss the entirety of the medical evidence of record in determining that he did not meet Listing 1.04 at step three of the analysis. [ECF No. 13, at 9-12]. After careful consideration, I disagree.

In step three of the analysis set forth above, the ALJ must determine if the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1. Jesurum v. Sec'y of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995). An applicant is

4

*per se* disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary. Burnett v. Comm'r, 220 F.3d 112, 119 (3d Cir. 2000). The Court of Appeals for the Third Circuit has held that:

> Putting the responsibility on the ALJ to identify the relevant listed impairment(s) is consistent with the nature of Social Security disability proceedings which are "inquisitorial rather than adversarial" and in which "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."

Id. at 120, n.2 (quoting Sims v. Apfel, 530 U.S. 103 (2000)). Further, the ALJ must provide an explanation of his reasoning at step three in order for courts to engage in meaningful judicial review. See id. at 119-20 (holding that an ALJ's bare conclusory statement that an impairment did not match, or was not equivalent to, a listed impairment was insufficient). Subsequent decisions have clarified, however, that the ALJ's failure to cite a specific Listing at step three is not fatal provided that the ALJ's development of the record and explanation of findings permit meaningful review of the step-three conclusion. See Jones v. Barnhart, 364 F.3d 501, 503-05 (3d Cir. 2004); Lopez v. Comm'r of Soc. Sec., 270 F. App'x 119, 121-22 (3d Cir. 2008). It remains the Plaintiff's burden to show that his impairment meets or equals a listed impairment. See Pallens v. Colvin, Civil Action No. 13-7350, 2015 WL 6502100, at *4 (D.N.J. 2015). Moreover, "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original).

In this case, Plaintiff argues that the ALJ failed to evaluate appropriately whether he had a condition that met or equaled Listing 1.04. See 20 C.F.R. pt. 404, subpt. P, app.1 § 1.04. For the reasons set forth below, I disagree.

The applicable version of Listing 1.04 – Disorders of the Spine – provides, in relevant part:

> **1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal

> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app.1 § 1.04. As the above language indicates, an impairment meets this Listing when all of the requirements of both the introductory paragraph and one of paragraphs A, B, or C are satisfied.

This is not a case where the ALJ neglected to mention the applicable listing in her Step Three analysis. To the contrary, the ALJ specifically cited Listing 1.04 and stated that Plaintiff did not meet that Listing because the evidence did not show nerve root compression (as required by 1.04A), spinal arachnoiditis (as required by 1.04B), or the inability to ambulate effectively (as required by 1.04C). [ECF No. 10-2 at 13].The ALJ further cited certain physical examination records indicating, inter alia, that Plaintiff has normal gait and indicated that the medical records were discussed further elsewhere in her opinion. See id. (citing Exs. 12F, 26F, 28F). She also explained that none of Plaintiff's treating or examining physicians reported the necessary clinical, laboratory, or radiographic findings required by the Listing. See id. Based on the above, and in reviewing the ALJ's opinion as a whole, I find that the ALJ properly evaluated Plaintiff's impairments under Listing 1.04.

6

Plaintiff's argument that the ALJ failed to address the entirety of the medical evidence in making her Step Three finding is without merit. Plaintiff first asserts that the ALJ failed to consider the records of his surgeon, Dr. Monaco, indicating on two occasions that Plaintiff had antalgic gait. [ECF No. 13 at 11 (citing Ex. 22F at 4, 6)]. It is well-established, however, that "there is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). Here, it is apparent from the opinion that the ALJ considered the entirety of the medical record, including Dr. Monaco's records. See, e.g., ECF No. 10-2, at 15 (citing Ex. 22F). Moreover, Plaintiff fails to explain how demonstrating antalgic gait on two or more occasions prior to his surgery shows that he meets *all* of the requirements of Listing 1.04A, B, or C. Plaintiff's further argument that the ALJ ignored his August 8, 2017 lumbar MRI also is misplaced. [ECF No. 13, at 11-12]. Plaintiff states that, although the ALJ discussed an April 2017 MRI, he failed to discuss the results of the August 8, 2017 MRI. Id. (citing Exs. 6F, 26F). Upon inspection, however, both of the reports Plaintiff cites are identical and both discuss the August 8, 2017 MRI. See ECF Nos. 10-7 (Ex. 6F), 10-12 (Ex. 26F). Thus, the ALJ did not fail to address any pertinent MRI results. Further, even if the MRI results evidence some pre-surgery nerve root compression within the meaning of Listing 1.04, they do not demonstrate that Plaintiff met all of the elements of Listing 1.04A, B, or C as required.

For all of these reasons, and because the ALJ supported her Step Three finding with substantial evidence of record, remand on this issue is not warranted.

### C. WHETHER THE ALJ ERRONEOUSLY FAILED TO ADDRESS PLAINTIFF'S PRE-SURGERY LIMITATIONS

Plaintiff argues that the ALJ erred by failing to address his limitations between his onset date (July 1, 2017) and his surgery date (January 4, 2019). [ECF No. 13 at 12-14]. Plaintiff asserts that the ALJ discussed Plaintiff's impairment "with language of the present" and assessed

7

limitations primarily based on his condition post-surgery. See id. The record belies this argument. Contrary to Plaintiff's assertions, the ALJ extensively discussed Plaintiff's pre-surgical condition in support of her RFC finding. Specifically, the ALJ cited numerous 2017/2018 medical records supporting the limitations set forth in the RFC, as well as evidence from the same time period that further limitations were not supported. [ECF No. 10-2 at 14-15 (citing Exs. 6F/1-2; 7F/46; 8F/1; 9F/3-4; 12F/8, 11, 21; 26F/25, 34, 41, 58; & 28F/11, 25, all dated in 2017 and 2018)]. With respect to the latter, the ALJ noted that, despite reporting pain, physical examination showed intact gait, station, and balance; records showed Plaintiff had full strength with no significant weakness or numbness as well as normal reflexes in the bilateral upper and lower extremities; and, despite a finding of tenderness, Plaintiff had intact sensation in his lower extremities. See id. The ALJ also accepted the limitations assessed by the state agency medical consultant in February 2018 (pre-surgery), including a limitation to light work; occasionally climbing ramps or stairs, stooping, crouching, crawling, and balancing; and reduced exposure to extreme cold. See id. at 15 (citing Ex. 1A). Indeed, the ALJ cited Plaintiff's surgery as evidence that he required even greater restrictions than those opined by the state agency physician, and she incorporated those greater restrictions into the RFC. See id. at 15 (stating that Plaintiff's lumbar laminectomy reasonably suggested that Plaintiff required greater limitations, including a sit/stand option; and an inability to climb ladders, ropes, or scaffolds, or to work at unprotected heights).

Because the record is clear that the ALJ considered both Plaintiff's pre- and post-surgical history in crafting her RFC finding, and substantial record evidence, as cited above, supports that finding, I find no error in this regard.[2]

### III.    CONCLUSION

---

[2] To the extent Plaintiff cites medical evidence to support his claim for additional restrictions, the standard is not whether there is evidence to establish Plaintiff's position but, rather, is whether there is substantial evidence to support the ALJ's findings. See Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Thus, such argument is misplaced.

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY J. COMBES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Action No. 2:20-1026 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], | ) ) ) ) |
| Defendant. | ) ) |

AMBROSE, Senior District Judge

**ORDER OF COURT**

AND NOW, this 6th day of December, 2021, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that the decision of the ALJ is affirmed and that Defendant's Motion for Summary Judgment [ECF No. 16] is GRANTED and Plaintiff's Motion for Summary Judgment [ECF No. 12] is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is therefore automatically substituted for Andrew M. Saul as the Defendant in this suit.